IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL WALSH KEELEY and<br>RACHEL M. KEELEY | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:25-CV-1889-MAB[1] |
| vs. | ) | |
| | ) | |
| LOANCARE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion to dismiss filed by Defendant LoanCare, LLC (Doc. 6) and the motion to remand filed by Plaintiffs Michael and Rachael Keeley (Doc. 17). For the reasons explained below, the Court concludes that this matter was improperly removed to federal court and therefore the motion to remand (Doc. 17) will be granted. Because this case must be remanded, LoanCare's motion to dismiss (Doc. 6) will be terminated on the docket without a ruling.

### PROCEDURAL BACKGROUND

There is an extensive procedural history that preceded the removal of this case to federal court in October 2025 (Doc. 1). It began on December 19, 2017, when LoanCare, LLC filed a complaint in the state circuit court in St. Clair County, Illinois against Michael and Rachael Keeley, seeking to foreclose on the mortgage held by the Keeleys on a home

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (*see* Doc. 15).

in Belleville, Illinois after they defaulted on their payments (the "Foreclosure Action") (Doc. 17, p. 1; Doc. 19, p. 1; *see also* Doc. 17, pp. 7–10 (state court complaint)). On September 16, 2018, the Keeleys filed a counterclaim against LoanCare, alleging that LoanCare, through its agents, changed the locks on their home and converted/appropriated their personal property that was still in the home (Doc. 17, p. 1; Doc. 19, p. 2; *see also* Doc. 1-1, pp. 8–9 (state court counterclaim)). The Keeleys alleged the value of the property exceeded $50,000 (Doc. 1-1, pp. 8–9). LoanCare's attorney was served with the counterclaim on September 26, 2018 (Doc. 1-1, p. 6, para. 4; *Id.* at p. 7), and LoanCare responded by filing a motion to strike and dismiss the counterclaim (*see* Doc. 17, p. 2; *see also id.* at p. 17). The state court denied LoanCare's motion on November 8, 2018 (Doc. 17, p. 2; *see also id.* at p. 17). LoanCare never filed an answer or otherwise pleaded in response to the Keeley's counterclaim (Doc. 1-1, p. 6, para. 5).

Years later, Community Loan Servicing, LLC ("Community Loan") became the mortgagee and holder of the note secured by the mortgage at issue (Doc. 19, p. 2). On September 26, 2023, LoanCare and Community Loan jointly moved to substitute Community Loan as the plaintiff in the Foreclosure Action, and also jointly moved to sever the Keeley's counterclaim from the Foreclosure Action (*Id.*). Then, a year and a half later, on March 26, 2025, the state court granted both motions—Community Loan was substituted in as plaintiff in the Foreclosure Action, and the Keeley's counterclaim was severed from the Foreclosure Action and "transferred to the Law Division for Reassignment" (Doc. 17, p. 14).

It appears that the clerk of the circuit court did not automatically implement the judge's order and open a new case with the counterclaim as the initiating pleading. Rather, the Keeleys had to open a new case by filing the counterclaim restyled as a Complaint, which they did on August 28, 2025 (*see* Doc. 1-1, pp. 5–10). LoanCare was served with the summons and complaint on September 12, 2025 (Doc. 1, para. 3). LoanCare filed its notice of removal twenty-eight days later on October 10, 2025 (Doc. 1). A week later, LoanCare filed a motion to dismiss for failure to state a claim (Doc. 6), to which the Keeleys filed a response in opposition (Doc. 18). The Keeleys then filed a timely Motion to Remand (Doc. 17), to which LoanCare filed a response in opposition (Doc. 19). No reply briefs were filed to either motion.

After reviewing the Notice of Removal, the pending motions, and the response briefs, the Court ordered LoanCare to file an Amended Notice of Removal in order to properly allege its own citizenship (Doc. 20). LoanCare filed its Amended Notice of Removal on May 21, 2026 (Doc. 21), which rectified the deficiencies in its jurisdictional allegations. The Court, having been assured that federal subject matter jurisdiction is secure, will now address the parties' respective motions, beginning with the Keeleys' motion to remand.

**DISCUSSION**

This case was removed pursuant to the general removal statute, 28 U.S.C. § 1441(a) (Docs. 1, 21). That statute provides that "any civil action brought in a State court . . . may be removed by the defendant or the defendants" as long as federal district courts would have "original jurisdiction" over the action. 28 U.S.C. § 1441(a); *Home Depot U. S. A., Inc.*

*v. Jackson*, 587 U.S. 435, 438 (2019). Federal courts are courts of limited jurisdiction, and thus there is a "long-established precedent that the removal statutes are to be strictly construed . . . ." *Morris v. Nuzzo*, 718 F.3d 660, 670 (7th Cir. 2013) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)); *see also Home Depot*, 587 U.S. at 437 (federal courts are "courts of limited jurisdiction"). Upon a motion to remand, the removing party bears the burden of establishing that the state court suit was properly removed to federal court. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Doubts about the propriety of removing an action should be resolved in favor of remand. *Id.* (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).

The Keeleys argue that removal was improper because LoanCare, as a state-court plaintiff/counterclaim defendant, is not authorized to remove a counterclaim to federal court (Doc. 17, pp. 4–5). They further contend that "the actual controversy is not a new proceeding . . . but simply one where the counterclaim was severed and assigned a new case number." (*Id.* at p. 5). In other words, they say the nature of their claim as a counterclaim as well as the parties' positions in the litigation all remained the same despite the state court's severance order. LoanCare opposes the motion to remand, arguing that once the counterclaim was severed from the original foreclosure action, it became a new, separate, and removable action and LoanCare became a defendant entitled to remove (Doc. 19).

Under the general removal statute, only a "defendant" can remove an action from state court to federal court. *Home Depot*, 587 U.S. at 438 (quoting 28 U.S.C § 1441(a)). The Supreme Court has made clear that the "defendant" referred to in § 1441(a) is "only . . .

the party sued by the original plaintiff"—meaning the original defendant. *Home Depot*, 587 U.S. at 437. The general removal statute "does not permit removal by any counterclaim defendant . . . ." *Id.* at 441. That means "a litigant who files suit in state court is a 'plaintiff' and cannot remove the case, even if the defendant files a counterclaim and the original plaintiff then wears two hats, one as plaintiff and one as defendant—and even if the counterclaim is distinct from the original claim and could have been a separate piece of litigation." *First Bank v. DJL Props., LLC*, 598 F.3d 915, 916 (7th Cir. 2010) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941)). *See also Home Depot*, 587 U.S. at 443 ("*Shamrock Oil* held that a counterclaim defendant who was also the original plaintiff could not remove under § 1441(a)'s predecessor statute.") (citing *Shamrock Oil*, 313 U.S. at 106–09). Likewise, "a third-party counterclaim defendant," meaning "a party brought into [the] lawsuit through a counterclaim filed by the original defendant" also cannot remove to federal court. *Home Depot*, 587 U.S. at 437, 444.

Additionally, the general removal statute "has long been interpreted to allow removal only of 'independent suits[.]'" *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 724 (7th Cir. 2012); *accord Fed. Sav. & Loan Ins. Corp. v. Quinn,* 419 F.2d 1014, 1018 (7th Cir. 1969). "A supplementary proceeding, a proceeding which is substantially a continuation of a prior suit, is not removable." *Quinn*, 419 F.2d at 1018.

The question of whether a party is the "defendant," or a controversy is a separate suit, for removal purposes is ultimately a federal question involving the interpretation and application of the removal statute. *Quinn*, 419 F.2d at 1018. *See also Chicago Rock Island & Pac. R.R. v. Stude,* 346 U.S. 574, 580 (1954) ("For the purpose of removal, federal law

determines who is plaintiff and who is defendant."). The state court's own characterization of the proceeding or the parties is not decisive. *Travelers*, 689 F.3d at 724. *Accord City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941) ("Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who [are] defendants."); 29A FED. PROC., L. ED. § 69:22 ("A federal district court is not bound by the technical form of the state proceedings or the parties' own designation of plaintiffs and defendants.") The removal statute, as the Supreme Court explained, must be "construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts," so that it can be applied uniformly across the nation, "unaffected by local law definition or characterization of the subject matter to which it is to be applied." *Shamrock Oil*, 313 U.S. at 104, 108–09.

Based on these principles, it is clear that LoanCare's status as both plaintiff and counterclaim defendant made it impossible for LoanCare to remove the Keeley's conversion claim to federal court when it was first filed as a counterclaim in the foreclosure suit in September 2018, or at any point during the ensuing six and a half years that LoanCare remained the plaintiff in the foreclosure suit. After Community Loan was substituted in as the plaintiff in the foreclosure suit, it was still not possible for LoanCare to remove the conversion claim because third-party counterclaim defendants are not eligible to remove. It was only after the state court agreed to sever the Keeleys' conversion claim that LoanCare sought removal to federal court. According to LoanCare, "[t]he severance fundamentally altered the parties' procedural posture" because once the

Keeleys counterclaim was severed, it became a new, independent civil action eligible for removal and LoanCare became a "defendant" eligible to remove it (Doc. 19, pp. 3–5).

LoanCare claims that "Federal courts consistently hold that severed claims are treated as distinct lawsuits eligible for removal." (Doc. 19, p. 4). However, the three cases LoanCare points the Court to simply do not support that contention. *Gaffney v. Riverboat Servs. of Indiana, Inc* addresses the difference between severance under Federal Rule of Civil Procedure 21 versus bifurcation under Rule 42, *completely outside of the removal context*. 451 F.3d 424, 442 (7th Cir. 2006). *Gaffney* says nothing about how to determine whether severance by a state court results in commencement of a new action eligible for removal. *See id.* Next, *Vogel v. Merck & Co.*, actually held the opposite of what LoanCare claims. *See* 476 F.Supp.2d 996, 1000 (S.D. Ill. 2007). The *Vogel* court found that although there was a state court order purporting to sever certain claims, there was "no indication" that the claims "truly [had] been severed so as to render them separate judicial units" eligible for removal. *Id.* The only case that LoanCare cited in which the federal court concluded that the state-court severance order truly severed certain claims into an independent action was *Sanders v. Merck & Co.,* 2007 WL 924497 (S.D. Ill. Mar. 27, 2007). However, in *Sanders*, the court ultimately determined that removal was procedurally defective because it violated the voluntary-involuntary rule. *Id.* at * 4, 7.[2]

---

[2] The voluntary-involuntary rule holds generally that a case can be made removable only by a plaintiff's voluntary act. *See Sanders*, 2007 WL 924497, at * *5-7; *Vogel*, 476 F.Supp.2d at 1002-07. *See also Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir. 1992) ("[T]he Supreme Court held that cases with non-diverse parties did not become removable just because a non-diverse defendant was dismissed from the case. . . . Instead, the Court held that such suits were removable only if the plaintiff *voluntarily* dismissed a non-diverse defendant.") (internal citations omitted).

Determining whether a claim severed in state court created an independent suit potentially subject to removal is simply not as straightforward as LoanCare seeks to portray. Under Illinois law, the term "severance" can arise in at least three distinct contexts, only one of which creates a truly separate action. *Vogel*, 476 F. Supp. 2d at 1001 (citing *Carter v. Chicago & Illinois Midland Railway Co.,* 518 N.E.2d 1031 (Ill. 1988)). As the Illinois Supreme Court explained, "[t]he term 'sever' is used broadly, and when a trial court orders an issue or claim severed, more often than not the court is simply providing for separate trials and has not determined that the claims thereafter should proceed as separate actions." *Carter*, 518 N.E.2d at 1037. In other words, not every order of severance results in the commencement of a new action and, therefore, "[i]n the context of removal to federal court in diversity jurisdiction, the mere fact that an order of a state court purports to have 'severed' claims generally is insufficient to make a case removable." *Vogel*, 476 F.Supp.2d at 999.

To determine whether a case is truly severed and a new action is commenced for removal purposes, the Court must consider the specific circumstances. *Travelers*, 689 F.3d at 724. "Whether a particular state judicial procedure qualifies as a separate action [for removal purposes] is not an all-or-nothing proposition. It depends on the context of each case in which it arises." *Id.* (citing *Quinn,* 419 F.2d at 1018–19). "[A] proceeding is independent, and thus potentially removable, where it presents 'genuine disputes with new parties and raise[s] new issues of fact and law.'" *Cf. Rizvi v. Allstate Corp.*, 833 F.3d

724, 727 (7th Cir. 2016) (quoting *Travelers*, 689 F.3d at 725) (stating test for deciding whether a proceeding is independent or an ancillary/supplementary proceeding).

Here, the Court cannot discern from the state court order what the state court judge intended with the severance order. The severance order merely says "Defendant's Counterclaim is severed from the present action and transferred to the Law Division for Reassignment." (Doc. 17, p. 14). The severance order did not cite to any section of the Illinois Code of Civil Procedure or other authority for its issuance (nor did LoanCare mention which section of the Code it invoked in asking for the severance (*see* Doc. 19)) or otherwise "clearly and unequivocally" indicate that the severed counterclaim was to proceed as separate and apart from the foreclosure case. *See Carter*, 518 N.E.2d at 1036 ("In determining whether an action has been severed so that it thereafter will proceed as a separate case, and a judgment thereon will be appealable . . . courts have used such words as 'separate actions' or 'a single claim' or 'separate issues and parties.'"). LoanCare did not make any argument or cite to any case law explaining what "transferred . . . for reassignment" means in the context of the Illinois Code of Civil Procedure (*see* Doc. 19). Nor did LoanCare make any argument that the Keeleys' counterclaim was improperly joined as a counterclaim and should have been filed as a separate action from the outset (*see* Doc. 19).

Under these circumstances, the Court cannot say with certainty that the state court severed the conversion claim with the intent that it proceed as an entirely separate action on which an entirely separate and appealable judgment would enter, just as if the case had proceeded as a single-claim action. It is possible that the state court severed the

conversion claim so that it could be tried separately from the foreclosure claim for the sake of convenience and efficiency. *See Carter*, 518 N.E.2d at 1036 ("Section 2–614(b) of the Code of Civil Procedure (Ill.Rev.Stat.1985, ch. 110, par. 2–614(b)) provides that the court may, in its discretion, 'order separate trial of any causes of action, counterclaim or third-party claim if it cannot be conveniently disposed of with the other issues in the case.'"). *See also Kelly v. JP Morgan Chase Bank, Nat'l Ass'n,* No. CV TDC-15-1115, 2015 WL 9183428, at *2 (D. Md. Dec. 17, 2015) (explaining that counterclaim severed from a foreclosure proceeding was "severed for litigation" in order to give the state court "more flexibility in addressing the thorny issues that often arise when counterclaims are filed in foreclosure actions.") (citing *Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 655 A.2d 1265, 1275 n.9 (Md. 1995) (noting the "practical difficulties" that stem from the docketing of counterclaims in foreclosure proceedings)).

The Court further notes that there are no new parties in the severed case—it is still just the Keeleys and LoanCare, the original parties to the foreclosure suit. And the severed case does not raise new issues or distinctly new claims from those in the foreclosure suit. The core issue in the foreclosure suit is whether the Keeleys defaulted on their mortgage and whether the lender (originally LoanCare) has the legal right to seize and sell the property to recover the debt. The core issue in the Keeley's conversion claim is whether LoanCare wrongfully and prematurely seized the property during the foreclosure process. It seems to the Court that litigation of both the foreclosure suit and the conversion claim will rely on many of the same facts.

While the Keeleys were required by the state court to refile their counterclaim as a complaint in a new case, it is unclear why a change in form should be understood to create an entirely new action. The Keeleys' conversion claim against LoanCare already started when it was filed as a counterclaim in 2018 in the foreclosure action. LoanCare was put on notice of the claim and even tried to have it dismissed, which was rejected. The claim continued to be maintained as a counterclaim for the next six-and-a-half years. When the conversion claim was severed, it was not the start of a new action; it was simply the continuation of a years-old claim under a new case number. In other words, it was the same challenge to LoanCare's conduct, just now in a different form.

For these reasons, the Court concludes that the state court's severance order did not create a new, independent action. *See Cicero Chamber of Com. & Indus. v. De Oca*, No. 12 C 1404, 2012 WL 1419346, at *1 (N.D. Ill. Apr. 23, 2012) (holding no second lawsuit was created when the plaintiff successfully moved to have counterclaims severed); *Rodriguez v. Federal National Mortgage Association*, 268 F.Supp.2d 87, 90–91 (D. Mass. 2003) (holding no second lawsuit was created when parties agreed that original plaintiff FNMA would dismiss its state-court complaint and original defendant Gonzalez would re-file his counterclaims as a new state-court complaint, identifying Gonzalez as the "plaintiff" and FNMA as the "defendant"; "the reidentification of the parties . . . [pursuant to their stipulation] was nothing more than a convenient handle"). *See also Quinn,* 419 F.2d at 1018 (explaining counterclaim remaining in a state court suit after the plaintiff dismissed the original complaint does not become an independent suit and is not removable) (citing *West v. Aurora City*, 73 U.S. 139 (1868)); *Moss Land & Min. Corp. v. Fid. & Cas. Co. of New*

*York*, No. CIV.A. 03-AR-845-J, 2003 WL 21360803, at *3 (N.D. Ala. June 6, 2003) ("Fidelity's status as a cross-claim defendant did not change magically at the moment of the dismissal of the original action. No metamorphosis took place to make the ugly non-removable caterpillar into a beautiful removable butterfly.").

A contrary result, as other courts have pointed out, would invite "jurisdictional havoc" by permitting parties to circumvent the well-settled law that counterclaim defendants cannot remove to federal court by simply agreeing, or successfully moving, to have a counterclaim severed. *Rodriguez*, 268 F.Supp.2d at 90; *Cicero*, 2012 WL 1419346, at *1. *See also Home Depot*, 587 U.S. at 464 (Alito, J., dissenting) (restating *Shamrock Oil*'s holding that "[i]f A sues B in state court, and B brings a counterclaim against A, this does not then allow A to remove the case to federal court. As the original plaintiff who chose the forum, A does not get to change its mind now.") A contrary result would also "radically expand" the class of removable cases in contravention of *Shamrock Oil*'s holding that the federal removal statute determines whether a suit is removable, irrespective of the state court's characterization, and the removal statute must be construed narrowly and against removal in order to preserve the limited jurisdiction of federal courts. *Cicero*, 2012 WL 1419346, at *1.

The Court cannot allow LoanCare to circumvent the well-settled law by having itself dismissed from the original complaint and then the counterclaim severed. Parties should not be allowed to so easily manufacture federal jurisdiction and channel previously unremovable cases into the federal courts given the strict limitations Congress has imposed on the jurisdiction of federal district courts. Moreover, it is worth noting that

removal in this instance—*seven years* after the Keeleys' conversion claim was first asserted—would entirely undermine the one-year limitation on removing cases based on diversity jurisdiction. 28 U.S.C. § 1446(c)(1). "Congress clearly intended that, after a point, cases should remain in state court." *In re Roundup Prods. Liab. Litig.*, 396 F. Supp. 3d 893, 900 (N.D. Cal. 2019) (citing H.R. Rep. 100-889, at 72 ("[T]here is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuttling a case between two courts that each have subject matter jurisdiction.")). Accord *New York Life Ins. Co. v. Deshotel,* 142 F.3d 873, 886 (5th Cir.1998) ("Congress found that '[r]emoval late in the proceedings may result in substantial delay and disruption' of a case, and enacted the one-year limit as 'a means of reducing the opportunity for removal after substantial progress has been made in state court.'") (citing H.R.Rep. No. 100-889 (1988)).[3]

Having concluded that this matter was improperly removed and must be remanded back to state court, the Court must decline to address LoanCare's Motion to Dismiss. LoanCare can refile it (if necessary) once this case returns to state court.

### Conclusion

The Court concludes that removal was improper in this case. The Keeley's Motion to Remand (Doc. 17) is **GRANTED**. This action is hereby **REMANDED** to the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois. LoanCare's Motion to Dismiss (Doc. 6) is **TERMINATED** on the docket without a ruling.

---

[3] To be clear, the Court is ordering remand because the state-court's severance of the Keeley's conversion claim did not create a new, independent action. The Court simply notes the one-year limitation as a supportive aside, not as an independent grounds for remand.

**IT IS SO ORDERED.**

**DATED: June 11, 2026**

**MARK A. BEATTY**
**United States Magistrate Judge**